**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

DAVID PALM,

*Plaintiff*,

v.

TAURUS INTERNATIONAL
MANUFACTURING, INC., and
TAURUS HOLDINGS, INC.,

*Defendants*.

Case No. 3:22-CV-337

**JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT**

Plaintiff David Palm brings this First Amended Complaint against the above-named Defendants and for his cause of action states the following:

**Introduction**

1.      Plaintiff was seriously injured when his .40 caliber first-generation Millennium series PT 140 Pro pistol ("the Taurus Pistol") unintentionally discharged due to a safety defect which rendered his pistol unreasonably dangerous and unfit for its intended use. The serial number of the Taurus Pistol is SCR64397.  This safety defect allows the trigger to move rearward when the pistol is subject to impact or dropped (the "Drop-Fire Defect" or "Safety Defect").  The Drop-Fire Defect results in the Pistol firing unexpectedly and against the intentions of the pistol's handler.

2.      In filing this lawsuit, Plaintiff does not wish or intend to disparage the Second Amendment's right to bear arms. Rather, Plaintiff seeks to hold the Taurus Defendants accountable for their actions in importing, marketing, distributing, failing to test and inspect the Pistol, and misrepresenting facts about the safety of the Pistol – which is defective and unreasonably dangerous as described in this Complaint.  Instead of impinging upon the Second

1

Amendment, this lawsuit is brought by an individual who had lawfully exercised his Second Amendment right to bear arms.

3.      Plaintiff's Pistol is defective and unreasonably dangerous because the Safety Defect will not prevent and did not prevent the unintended discharge of the Pistol – resulting in Plaintiff's injuries.  The Safety Defect resulted from the inadequate design, manufacturing, and testing Plaintiff's Pistol, and the continued failure of the Defendants to remedy the Safety Defect.

4.      Despite actual knowledge of the Safety Defect, Taurus never remedied the Defect, and never issued an effective and complete warning to the public or recall of the Plaintiff's Pistol prior to April 13, 2019 (the date Plaintiff was seriously injured due to the Safety Defect). In fact, prior to April 13, 2019, Taurus continued to falsely represent to the public and Plaintiff that the Pistol was safe and reliable despite their knowledge that individuals had been seriously injured as result of the Safety Defect.

5.      Taurus Defendants had a duty to disclose and warn Plaintiff truthfully and accurately, and not to conceal or misrepresent such truth, about the Safety Defect. Notwithstanding this duty, and in violation thereof, the Taurus Defendants carelessly and negligently failed to disclose to and warn Plaintiff the truth about his Pistol and the Safety Defect.

6.      Taurus Defendants fraudulently concealed and intentionally failed to warn Plaintiff of the Safety Defect with the intent to deceive him and the general public about the Defect.  Taurus Defendants falsely and fraudulently represented to Plaintiff that his Pistol was safe for normal and intended use, when in fact Plaintiff's Pistol was not safe for normal and intended use.

7.     Taurus Defendants conspired among themselves and with others to conceal from the public and Plaintiff the Safety Defect and Defendants' efforts to understate or misrepresent the nature of the risk created by the Defect.  All of these acts occurred and were initiated in the Miami-Dade County offices of Taurus Defendants.

8.     The Safety Defect is a latent defect and Plaintiff's Pistol was defective in a way that would not be apparent to Plaintiff and the public.

**Parties**

9.     Plaintiff David Palm is over the age of 21 and at all times pertinent to this Compliant was a resident citizen of Starke County, Indiana.

10.     Defendant Taurus International Manufacturing, Inc. ("Taurus Manufacturing") and Defendant Taurus Holdings, Inc. ("Taurus Holdings") (collectively "Taurus Defendants") were Florida corporations, operating and conducting business in Florida at the time the subject pistol was designed, manufactured, marketed, distributed and/or sold. Defendants Taurus Manufacturing and Taurus Holding's principal place of business was in Miami, Florida. Taurus Holdings is the one hundred percent stockholder of Taurus Manufacturing and they are both in the business of importing, manufacturing, testing, inspecting, marketing, selling, and distributing firearms. Taurus Defendants were responsible for importing, testing, inspecting, marketing, selling, and distributing Plaintiff's Taurus Pistol.

11.     Forjas Taurus, SA was a Brazilian corporation with its principal place of business at Avenida de Forte, 511, Porto Alegre/RS, Brazil and Forjas Taurus manufactured the Class Pistols and other firearms in Brazil under the "Taurus" brand name and distributed the Class Pistols and other firearms in Florida and throughout the United States under the "Taurus" brand name via Defendants Taurus Manufacturing and Taurus Holdings. Forjas created, owned,

operated and controlled Taurus Holdings, which in turn created, operated, and controlled Taurus Manufacturing. Taurus Holdings and Taurus Manufacturing operated out of the same building located at 16175 NW 49th Avenue, Miami, Florida 33014 ("Miami-Dade County Headquarters") and employed approximately 325 employees in their Miami-Dade County Headquarters, who were employed to perform importation, testing, inspection, sales, marketing, operations, distribution, and warranty repairs for all Taurus firearms (including Plaintiff's Pistol) manufactured by Forjas or Taurus Manufacturing.

12.     Forjas manufactured and shipped firearms into the United States, including Plaintiff's Pistol. These firearms were sold and delivered to Taurus Holdings and Taurus Manufacturing in Miami for the purposes of resale in the United States through the Defendants' distribution chain. The Plaintiff's Pistol was shipped by Forjas to the Miami-Dade County Headquarters and Taurus Defendants then placed Plaintiff's Pistol into the stream of commerce from their Miami-Dade County Headquarters.

13.     The Taurus Defendants are so intertwined contractually for each other's liabilities that they are essentially one entity with regard to the allegations in this Complaint.  Moreover, they are each included as either insureds or additional insureds on the same insurance policies that would provide coverage for the claims alleged in this Complaint.

## Jurisdiction and Venue

14.     Jurisdiction over the subject matter of this case arises under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and complete diversity exists between Plaintiff and the Defendants.

15.     This Court has personal jurisdiction over Defendants Taurus Manufacturing and Taurus Holdings because of their presence in the forum.

16.     Venue was transferred to this forum on April 26, 2022. Plaintiff maintains that venue is not proper in this forum.

17.     Plaintiff maintains that venue is proper in Miami-Dade County, and thus Florida law applies in the alternative, as to Defendants Taurus Manufacturing and Taurus Holdings because they resided in that judicial circuit, because the events or omissions giving rise to Plaintiff's claims occurred in Miami-Dade County and all the wrongful conduct of Taurus Defendants emanated from Miami-Dade County. Moreover, Taurus Defendants regularly and systematically conducted business in Miami-Dade County, including but not limited to, the importation of Plaintiff's Pistol into Miami-Dade County from Brazil under the "Taurus" brand name and distributing the Pistol and other Taurus firearms from Miami-Dade County throughout the United States under the "Taurus" brand name.

18.     All of the facts and conduct related to the negligence, breach of express warranty, implied warranty of merchantability, implied warranty of fitness for a particular purpose, strict liability, negligent failure to use reasonable care, failure to warn, intentional misrepresentation, negligent misrepresentation, false information negligently supplied for the guidance of others, and intentional infliction of emotional distress claims had their origins in Miami-Dade County, including, Taurus Defendants' collective decision not to disclose, but rather to misrepresent, the known Safety Defect. All of the critical Taurus witnesses to each issue and claim set forth in Plaintiff's Complaint are located in Florida.

19.     A central liability issue in this case arises from Taurus Defendants' failure to test and inspect Plaintiff's Pistol in order to determine its defective nature prior to selling it and thereafter placing a defective firearm into the stream of commerce—all of which took place at the Taurus Defendants' place of operations located in Miami-Dade County.

20.     Plaintiff's Complaint involves issues of vicarious liability for the actions of both Defendants. As set forth in the Complaint, Plaintiff has asserted claims based upon apparent agency, alter ego, and vicarious liability, all of which are central to the Plaintiff's claims in this case. Taurus Defendants' current and former employees are witnesses to these relationships and are located in Florida.

21.     The State of Florida and the citizens of Miami-Dade County have an obvious interest in regulating and holding accountable Florida businesses who engaged in dishonest business practices as described in this Complaint.

**Vicarious Liability**

22.     At all times material to the allegations and claims in this Complaint, Taurus Manufacturing and Taurus Holdings were engaged in a joint venture, apparent agency and/or alter ego relationship, and accordingly each Defendant is liable for the acts and omissions of the other.

23.      As such, Taurus Defendants are vicariously liable for the matters asserted in this Complaint.

**Combined and Concurring Conduct**

24.     The conduct of Taurus Manufacturing and Taurus Holdings as described in this Complaint combined and concurred to cause Plaintiff's injuries.

**Estoppel and Tolling of Statute of Limitations**

25.     Taurus Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment, which include the Taurus Defendants' intentional concealment from Plaintiff, and the general public that the pistols are defective, while continually marketing and distributing the pistols with the Drop-Fire Defect.

26.     Given Taurus Defendants' affirmative actions of concealment by failing to disclose this known but non-public information about the Defect—information over which the Taurus Defendants had exclusive control—and because Plaintiff could not reasonably have known that his Pistol was defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

27.     The time period for Plaintiff to bring this action has also been tolled by the April 7, 2021 Tolling Agreement of the Parties and a subsequent amendment thereto.

**Facts**

**(a)  Background of Taurus Manufacturing and Taurus Holdings**

28.     Forjas Taurus S.A. produced small arms in Brazil beginning in 1941.  In 1968, Forjas Taurus ventured into the U.S. market "by employing the services of a succession of U.S. distributors," but "[t]heir efforts met with only marginal success."  As a result, the management of Forjas Taurus made the decision in 1982 to "take the bull by the horns" and open an affiliated United States company in Miami-Dade County, namely, Defendant Taurus Manufacturing.

29.     In 1982, when Defendant Taurus Manufacturing began distributing and selling its pistols here in the United States, it considered its brand of firearms to be "an unknown commodity in the United States" and "sales that first year in the United States were limited as a solid distribution system had to be established."  In 1984, the Taurus Defendants decided to offer an Unlimited Lifetime Repair Policy.  This "one brilliant piece of marketing changed the course of the company in this market" and "made everyone sit up and take notice of Taurus Firearms." As a result, according to Taurus Manufacturing, the "U.S. company has posted record years ever since."

**(b) Taurus Defendants' Misrepresentations Regarding the Drop-Fire Defect**

30.     Prior to and at the time the Taurus Defendants distributed Plaintiff's Pistol from their Miami-Dade County Headquarters they engaged in fraud, deception, false promises, misrepresentations, concealment, suppression, or omission of material facts in making the following representations: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and "[t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;" (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards." Moreover, Taurus Defendants' represented that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

31.     Taurus Defendants engaged in the concealment, suppression, or omission of these material facts with the intent that others, such as Plaintiff, and/or the general public would rely upon the concealment, suppression, or omission of such material facts.

32.     Taurus Defendants knew that at the time Plaintiff's Pistol left the Taurus Defendants' control the Plaintiff's Pistol contained the Drop-Fire Defect.  At the time Plaintiff's Pistol was imported, marketed, distributed, and sold it contained the Safety Defect.  The Safety Defect reduced the effectiveness and performance of Plaintiff's Pistol and rendered it unable to

perform the ordinary purposes for which was to be used as well as causing the resulting injuries and damages described in this Complaint.

33.     Taurus Defendants represent in their user manual that Plaintiff's Pistol is equipped with certain "Safety devices," including, an internal "Trigger Safety" and "Firing Pin Block."   According to Taurus, the  "Trigger Safety" is "designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and "[t]he system is disengaged when the trigger is pulled to the rear."  The "Firing Pin Block" is described as being "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position" and "is designed to preclude an accidental discharge should the firearm be dropped."

34.     These "Safety devices" for the subject pistol are described  and illustrated by Taurus as follows:



1) Trigger Safety

This device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped. The system is disengaged when the trigger is pulled to the rear.



2) Firing Pin Block

The firing pin block, which is designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position. This device is designed to preclude an accidental discharge should the firearm be dropped.

35.     The design of Plaintiff's Pistol as described is defective and as a result there is no effective "Safety device" to prevent an unintended discharge or Drop-fire, even when the Manual Safety Lever is turned on and the Pistol is dropped from a height at which the Pistol is normally used.

**(c)  Taurus Defendants' Prior Knowledge of the Drop-Fire Defect**

36.     For years, the Taurus Defendants knew of the Drop-Fire Defect and continued to import, market, and distribute thousands of these pistols from Miami-Dade County without inspecting the pistols, testing the pistols, or warning the public of the Defect.

37.     Despite knowing about the Drop-Fire Defect for years, the Taurus Defendants consciously and intentionally decided not to recall and/or retrofit the defective Pistols, including, Plaintiff's Pistol, which they knew was unreasonably dangerous and defective.

38.     It is undisputed that the Taurus Defendants were aware of the Drop-Fire Defect prior to the time Plaintiff's Pistol was imported to Miami-Dade County, distributed from Miami-Dade County, and then later purchased by Plaintiff.

39.     Taurus Defendants have been aware of the Drop-Fire Defect since at least 2007 and have even settled cases which involve the Drop-Fire Defect.  However, despite an ever-growing number of grievous injuries and settlements, prior to April 2019, Taurus Defendants refused to acknowledge that the pistols were defective, much less take any steps to warn consumers like Plaintiff about the dangers of using these pistols.  Instead, the Taurus Defendants continued to ignore indisputable evidence (including their own evidence) of the Drop-Fire Defect.

40.     In 2007, Taurus Defendants were made aware of the Drop-Fire Defect when Taurus Manufacturing was named as a Defendant in a lawsuit filed in the Circuit Court of

Etowah County, Alabama, styled *Adam Maroney v. Taurus International Manufacturing, Inc.*, CV-07-073-ACH (the "*Maroney*" case). The *Maroney* case arose from the following facts. In February 2005, Adam Maroney's Taurus Pistol fell out of his pocket onto the garage floor and discharged, sending a bullet up through Mr. Maroney's pancreas, spleen, diaphragm, and lungs. Mr. Maroney's Taurus Pistol was a PT 111, which is a similar design to Plaintiff's Pistol. Mr. Maroney had the Manual Safety in the "on" or "safe" position at the time his Taurus Pistol dropped to the garage floor. In the *Maroney* case, Taurus <u>admitted</u> that these pistols can discharge if they are dropped from a height at which the pistol is normally used. *See* Trial Testimony of Mr. Morrison at 124, *Maroney v. Taurus Int'l Mfg., Inc.*, Case No. 07-CV-073 (Ala. Cir. Ct. 2009), attached hereto as Exhibit A.

41.     In the *Maroney* case, Taurus retained their own expert (James C. Hutton) who conducted drop tests (the "Taurus Drop Test") on "brand new" Taurus pistols. The Taurus Drop Test was an attempt, <u>albeit a failed attempt</u>, to prove that the design of the pistols like Plaintiff's Pistol was not defective and that the design of the pistol served the purpose of preventing the "Firing Pin" from going forward and striking the primer when the pistols are dropped. The results of the Taurus Drop Test confirmed what Taurus already knew -- that the pistols were defective in design and purpose. Mr. Hutton admitted that the Taurus Drop Test showed an indent in the primer came from the Firing Pin going forward and striking the primer.

42.     In other words, Taurus Defendants' own expert admitted that the design of these pistols does not prevent the Firing Pin from going forward and striking the primer when the weapon is dropped, and further that the design of the pistols will not preclude an unintended discharge should the pistols be dropped from a height at which they are normally used.

43.     The Drop-Fire Defect has manifested multiple times, in many instances, causing serious bodily injury and death. The Taurus Defendants were aware of those manifestations (and upon information and belief, Defendants are and were aware of many more) but refused to take any action to protect or warn Plaintiff of the Drop-Fire Defect prior to April 2019.

44.     Robert G. Morrison,[1] the CEO for Taurus Manufacturing, testified under oath, to the following in the *Maroney* trial: "My answer to the question if you are referring to all PT 111s, it is I believe that they can go off if dropped." Further, Mr. Morrison testified that it is also foreseeable that the ultimate consumer of a pistol may drop it.  Exhibit A.

45.     There was ample evidence in the *Maroney* case to support a verdict against Taurus Manufacturing for its explicit desire to achieve profits at the expense of public safety and the future safety of individuals like Plaintiff Palm.  The jury in *Maroney* returned a verdict against Defendant Taurus Manufacturing for $1,250,000.00. Taurus Manufacturing did not appeal the jury's verdict, and the case was settled for a confidential amount.

46.     In April 2009, Craig Paulson was seriously injured from an unintended discharge of his Taurus pistol that was due to the Drop-Fire Defect.  Taurus Manufacturing and Taurus Holdings settled with Craig Paulson in December 2013 for a confidential amount.

47.     In November 2009, Ms. Judy Price was severely injured when her Taurus Pistol Model PT-140 discharged, with the Manual Safety Lever in the "on" or "safe" position, after she accidently dropped her Taurus Pistol from a height at which it is normally intended to be used. The bullet entered her thigh, and then went through her colon and intestines and the bullet remains lodged in her liver.  Ms. Price had months of complications and surgeries.  Taurus

---

[1] Robert G. Morrison had worked for Defendant Taurus Manufacturing since 1997 and began serving as its President and CEO in 2004. Mr. Morrison also served as the Executive Vice-President and COO of Defendant Taurus Holdings.  Mr. Morrison is no longer President and CEO, but a majority of the decisions surrounding the Drop-Fire Defect issues were made at the Miami-Dade County Headquarters while he was in control.

entered into a settlement agreement with Ms. Price in 2011 and the amount she received pursuant to the settlement agreement remains confidential.

48.     In February 2011, Scott Appleby was seriously injured from an unintended discharge of his Taurus pistol due to the Drop-Fire Defect.  Taurus Manufacturing and Taurus Holdings settled with Scott Appleby in August 2012 for a confidential amount.

49.     On or about September 2013, the Sao Paulo State Military Police in Brazil recalled all 98,000 of the .40 caliber S&W Taurus 24/7 Pistols issued to their personnel after discovering that the Taurus Pistols could be discharged without the trigger being pulled. Taurus Defendants were placed on notice of this information and video on or before January 8, 2014. The Sao Paulo State Military Police is the largest state police force in Brazil. According to information publicly available on the Internet, Taurus was to investigate the problem and promised an official comment. Further, an Internet website describing the recall by the Sao Paulo Military Police features a video showing the discharge of the .40 caliber S&W Taurus 24/7 Pistol without the trigger being pulled.[2]  The similar pistols imported, distributed, and sold in the United States are the same pistols described in this Complaint and have the same Drop-Fire Defect found in Plaintiff's Pistol.

50.     On January 8, 2014, Taurus Holdings and Taurus Manufacturing were served with a Class Action Complaint that was filed in the Southern District of Florida.  The Class Action Complaint further placed Taurus Defendants on notice that these pistols are defective and unreasonably dangerous due to the Drop-Fire Defect.  On February 12, 2014, Taurus Defendants answered the Class Action Complaint and denied that the Drop-Fire Defect existed.

---

[2]  The URL for the website is http://www.thefirearmblog.com/blog/2014/03/20/brazilian-police-pistol-accidental-discharges/ (last visited September 1, 2021).

51.     In February 2014, Jason Friend was seriously injured from an unintended discharge of his Taurus Model 24/7.  On October 30, 2015, Jason Friend filed a lawsuit in Miami-Dade County against the Taurus Defendants alleging that the Drop-Fire Defect caused the unintended discharge. *Friend v. Taurus Int'l Mfg., Inc., et al.*, Case No. 15-025380 CA 01 (Fla. 11th Cir. Ct. 2015).

52.     In May 2014, Nelson Martinez, Jr. accidently dropped his Taurus PT 24/7 and when it came into contact with the floor, the pistol had a "drop-fire" and unintentionally discharged resulting in a single round striking Nelson Martinez, Jr. and killing him.  On April 28, 2016, the parents of Mr. Martinez filed a lawsuit in Miami-Dade County against the Taurus Defendants alleging that the Drop-Fire Defect caused the unintended discharge and death of their son. *Martinez v. Taurus Int'l Mfg., Inc., et al.*, Case No. 16-010776 CA 01 (Fla. 11th Cir. Ct. 2016).

53.     Despite all of the information Taurus Defendants had in connection with the Drop-Fire Defect prior to the date Plaintiff's Pistol was imported and distributed and/or prior to April 2019, Taurus Defendants did not make any efforts to inform the public and/or Plaintiff about the Defect, or to issue any recalls and replace and/or repair and/or retrofit the pistols prior to April 2019.

54.     The allegations in this Complaint are well-supported by the troublesome history of these pistols, the harmful, sometimes death and life-threatening consequences of their use by consumers, as well as the Taurus Defendants' continued denial or failure to acknowledge the Defect.  These critical facts about Plaintiff's Pistol and the Drop-Fire Defect were hidden from the public by the Taurus Defendants' pattern of concealing the Defect and refusing to warn the public despite the Taurus Defendants' knowledge of the Defect.

55. Simply stated, these pistols are defective and inherently dangerous, Taurus knows it, and Taurus has known about the Defects for years prior to April 2019, but allowed the pistols to remain in the hands of unsuspecting gun owners despite the imminent risk of harm or death to individuals like Plaintiff Palm.

**(d) Facts Related to Plaintiff's Drop-Fire**

56. Plaintiff owns a Taurus Millennium PT 140 Pro .40 caliber striker-fired semi-automatic pistol, Serial Number: SCR64397 (the "Taurus Pistol" or "Pistol"). The serial number indicates a manufacture date of June 2009.

57. Plaintiff purchased the Pistol in or around March 2019.



58.     On April 13, 2019, after cleaning his Pistol, Plaintiff attempted to place the Pistol on a shelf.  When he did, the Pistol fell from the shelf, struck the hard floor of his living room, and fired. The bullet tore through Plaintiff's left hand, entering between his thumb and index finger and exiting out the back of his hand. Despite the fact that the Manual Safety Lever was in the "on" or "safe" position when Plaintiff's Pistol was dropped, the Pistol still fired.

59.     Evidence exists on the subject pistol which indicates it fired when dropped. For instance, at a joint inspection of the pistol, scuff marks were discovered on the rear of the firearm's frame, which indicates a drop-fire occurred:



60.     At the joint inspection conducted by the Parties, scuff marks were found on the bottom surface of the pistol's striker lug from sear tip contact with the moving striker lug:



61.     Additionally, there was a non-uniform sear tip contact wear pattern on the face of the striker lug:



62.     Finally, a CT scan of the subject pistol indicated low contact between the sear nose and the striker lug front surface:



63.     All of this evidence indicates that the subject pistol fired when dropped as described by Mr. Palm. The low contact length by the single action sear released the striker and fired a chambered round when the pistol was dropped onto its rear surface with sufficient energy to inertially move the pistol's trigger rearward and raise the striker block safety with the trigger bar. Scratch marks on the bottom surface of the striker lug and forward corner of second-strike sear show that the striker was released by the single-action sear and moved forward rapidly under striker spring pressure during a drop-fire. The small hook attached to the trigger does not reliably catch on the trigger bar during a rear impact (like a drop) to prevent inertial trigger movement. A blocking trigger safety like that used by competitors, like Glock, Inc., is a design that will stop inertial trigger movement.

64.     Notably, the subject pistol is one of the Taurus models covered by a nationwide product liability class action, *Chris P. Carter v. Forjas Taurus, S.A., Taurus International Manufacturing, Inc., and Taurus Holdings, Inc.*, Case No. 1:13-CV-24583-PAS (S.D. Fla. 2015), in which it was determined that this particular model firearm would fire when dropped without the user pulling the trigger.

65.     As a result of the Drop-Fire Defect and subsequent unintended discharge, Plaintiff lost much of the use of his left hand. Plaintiff has been told he will need surgery and physical therapy to regain full use of his hand. However, he has not undergone any surgeries yet because he does not have health insurance. Plaintiff's injuries as a result of the Drop-Fire Defect will require hospitalization and procedures leaving permanent physical and psychological limitations and deficits. Plaintiff's injuries are ongoing and surgery is required.

## Count One

## Indiana Products Liability Act – Manufacturing Defect (Strict Liability)

66.     Plaintiff incorporates by reference paragraphs 1 through 65 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

67.     A person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if: (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition; (2) the seller is engaged in the business of selling the product; and (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable. IC § 34-20-2-1.

68.     The Taurus Defendants are persons who sold, leased, or otherwise put into the stream of commerce Plaintiff's Pistol and are liable for the injuries caused to Plaintiff by the defective Pistol. Plaintiff is a user or consumer in the class of persons that the Taurus Defendants should have reasonably foreseen as being subject to harm caused by the Pistol's defective condition; the Taurus Defendants were and are engaged in the business of selling the Pistol; and the Pistol reached Plaintiff in substantially the same condition in which the Taurus Defendants sold it.

69.     A product is defective under the Indiana Products Liability Act (IPLA) if it is defectively designed, if it has a manufacturing flaw, or if it lacks adequate warnings about dangers associated with its use. IC § 34-20-4-1.

70.     A product is defective because of a manufacturing defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

71.     A product is unreasonably dangerous because of a manufacturing defect if it is different from its intended design and fails to perform as safely as the intended design would have performed.

72.     A product is defective if unreasonably dangerous even if Defendants have exercised all possible care in the preparation and sale of the product.

73.     Plaintiff's Pistol is defective because of the manufacturing defect (i.e., the Drop-Fire Defect) as it was different from its intended design and failed to perform as safely as the intended design would have performed. Plaintiff's Pistol was expected to and did reach Plaintiff without substantial change affecting that condition.

74.     The manufacturing defect (i.e. Drop-fire Defect) was the proximate and sole cause of Plaintiff's injuries.

75.     The Taurus Defendants are strictly liable for all injuries, damages, and losses that resulted from the manufacturing defect of Plaintiff's Pistol.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Two

## Indiana Products Liability Act – Design Defect

76.     Plaintiff incorporates by reference paragraphs 1 through 75 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

77.     A person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if: (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition; (2) the seller is engaged in the business of selling the product; and (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable. IC § 34-20-2-1.

78.     The Taurus Defendants are persons who sold, leased, or otherwise put into the stream of commerce Plaintiff's Pistol and are liable for the injuries caused to Plaintiff by the defective Pistol. Plaintiff is a user or consumer in the class of persons that the Taurus Defendants should have reasonably foreseen as being subject to harm caused by the Pistol's defective

condition; the Taurus Defendants were and are engaged in the business of selling the Pistol; and the Pistol reached Plaintiff in substantially the same condition in which the Taurus Defendants sold it.

79.     A product is defective because of a design defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

80.     A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the defendants, or alternatively, the risk of danger in the design outweighs the benefits.

81.     Under the IPLA, a product is defective because of a design defect where the manufacturer or seller fails to exercise reasonable care under the circumstances in designing the product. IC § 34-20-2-2.

82.     Plaintiff's Pistol is defective because of the design defect (i.e. the Drop-Fire Defect) and was in in a condition unreasonably dangerous to Plaintiff and the Pistol was expected to and did reach Plaintiff without substantial change affecting that condition.

83.     Under the IPLA, Taurus Defendants had a duty to exercise reasonable care in designing the Pistol. By failing to exercise reasonable care in designing the Pistol, Defendants breached that duty.

84.     The resulting design defect (i.e., Drop-fire Defect) was the proximate and sole cause of Plaintiff's injuries.

85.     The Taurus Defendants are liable for all injuries, damages, and losses that resulted from the design defect of Plaintiff's Pistol.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

**Count Three**

**Indiana Products Liability Act – Failure to Warn**

86.     Plaintiff incorporates by reference paragraphs 1 through 85 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

87.     A person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if: (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition; (2) the seller is engaged in the business of selling the product; and (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable. IC § 34-20-2-1.

88.     The Taurus Defendants were persons who sold, leased, or otherwise put into the stream of commerce Plaintiff's Pistol and are liable for the injuries caused to Plaintiff by the defective Pistol. Plaintiff is a user or consumer in the class of persons that the Taurus Defendants should have reasonably foreseen as being subject to harm caused by the Pistol's defective condition; the Taurus Defendants were and are engaged in the business of selling the Pistol; and the Pistol reached Plaintiff in the same condition in which the Taurus Defendants sold it.

89.     A product is defective for a failure to warn if a seller fails to: (1) properly package or label the product to give reasonable warnings of danger about the product; or (2) give

reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer. IC § 34-20-4-2.

90.     The Taurus Defendants could have provided reasonable instructions or warnings about the Pistol and the potential danger of a drop-fire, and such dangers were discoverable through the exercise of reasonable diligence—not to mention the years of prior litigation concerning drop-fire incidents.

91.     The foreseeable risks of harm from a drop-fire could have been reduced or avoided if Taurus Defendants had provided reasonable instructions or warnings, and the Taurus Defendant's failure to provide these instructions or warnings render Plaintiff's Pistol defective.

92.     The failure to warn was the proximate and sole cause of Plaintiff's injuries.

93.     The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their failure to warn Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Four

## Breach of Express Warranty

94.     Plaintiff incorporates by reference paragraphs 1 through 93 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

95.     A product is defective if it does not conform to representations of fact made by Defendants, orally or in writing, in connection with the transaction on which Plaintiff relied in the use of the product.

96.     Taurus Defendants made specific representations of fact in writing in their Instruction Manual and "Limited Warranty," -- written documents which are provided with the pistols and/or which are also published on the USA public website of Taurus Manufacturing. Each of the representations of fact is a separate and independent express warranty made to Plaintiff.

97.     The representations of fact made to Plaintiff and set forth in the Taurus Manual, include the following: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and [t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;"  (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards." Moreover, the representations of fact made to Plaintiff in the "Limited Warranty," were that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

98.     The Taurus Defendants breached these express warranties by not providing a product which conformed to these representations of fact.

99.     As a direct and proximate cause of Defendants' breach of express warranties, Plaintiff was severely injured.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Five

## Breach of Implied Warranty of Merchantability

100.    Plaintiff incorporates by reference paragraphs 1 through 99 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

101.    A product is defective if it is not reasonably fit for either the uses intended or the uses reasonably foreseeable by Defendants.

102.    Plaintiff's Pistol was not reasonably fit for either the uses intended or the uses reasonably foreseeable by Taurus Defendants due to the Safety Defect.

103.    The Taurus Defendants were on notice of the breach of implied warranties at the time Plaintiff's Pistol was imported, distributed, and sold by Taurus Defendants.  The Taurus Defendants knew, or should have known about the Safety Defect at the time Plaintiff's Pistol was imported, distributed, and sold by Taurus Defendants.

104.    As a result of the Taurus Defendants breach of implied warranties of merchantability, Plaintiff was severely injured.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

**Count Six**

**Breach of Implied Warranty of Fitness for Particular Purpose**

105.     Plaintiff incorporates by reference paragraphs 1 through 104 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

106.     A product is defective if it is not reasonably fit for the specific purpose for which Defendants knowingly sold the product and for which, in reliance on the judgment of Defendants, the purchaser bought the product.

107.     Plaintiff's Pistol is defective and was not reasonably fit for the specific purpose for which Taurus Defendants knowingly sold the Pistol and for which, in reliance on the judgment of Taurus Defendants, Plaintiff bought, owned and used the Pistol.

108.     As a result of the Taurus Defendants breach of implied warranties of fitness for a particular purpose, Plaintiff was severely injured.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

**Count Seven**

**Intentional Misrepresentation**

109.     Plaintiff incorporates by reference paragraphs 1 through 109 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

110.     Taurus Defendants intentionally made false statements concerning a material fact, they knew the statements were false when they were made or made the statements knowing they did not know whether they were true or false, and they intended that another would rely on the false statements.

111. The false statements included the following: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and [t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;"  (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."  Moreover, the representations of fact made to Plaintiff in the "Limited Warranty," were that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

112. Taurus Defendants knew these statements were false prior to Plaintiff's purchase of the Pistol in March 2019 due to extensive prior litigation concerning similar drop-fire incidents.

113. These false statements were a material fact of such importance that Plaintiff would have acted or used his Pistol, but for the false statements. Plaintiff relied on these false statements and the statements were the proximate cause of his injuries.  Plaintiff did not know the statements were false and the falsity of the statements was not obvious to him.

114. Taurus Defendants' intentional misrepresentation was the proximate and sole cause of Plaintiff's injuries.

115. The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their intentional misrepresentations.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Eight

## Negligent Misrepresentation

116.    Plaintiff incorporates by reference paragraphs 1 through 115 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

117.    Taurus Defendants made statements concerning a material fact that they believed to be true, but which were in fact false and they were negligent in making the statements because they should have known the statements were false and in making the statements they intended or expected that another would rely on the statements.

118.    The false statements included the following: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and [t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;"  (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."  Moreover, the representations of fact made to Plaintiff in the "Limited Warranty," were that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

119.    Taurus Defendants should have known these statements were false prior to Plaintiff's purchase of the Pistol in March 2019 due to extensive prior litigation concerning similar drop-fire incidents.

120.    Plaintiff justifiably relied on the false statements and the statements were the proximate cause of his injuries.

121.    Taurus Defendants' negligent misrepresentation was the proximate and sole cause of Plaintiff's injuries.

122.    The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their negligent misrepresentations.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

### Count Nine

### False Information Negligently Supplied for the Guidance of Others

123.    Plaintiff incorporates by reference paragraphs 1 through 122 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

124.    Taurus Defendants (a) supplied false information to Plaintiff in the course of Defendants' business or in a transaction in which Defendants had an economic interest; (b) they were negligent in obtaining or communicating the false information; (c) the Plaintiff was a person for whose benefit and guidance Defendants intended to supply the false information for use by Plaintiff in the handling and operation of his Pistol; and (d) Defendants intended the false information to influence Plaintiff in his transaction or course of his conduct.

125.    The following false information was supplied to Plaintiff: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and [t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;"  (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards." Moreover, the representations of fact made to Plaintiff in the "Limited Warranty," were that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

126.    Taurus Defendants knew or should have known these statements were false prior to Plaintiff's purchase of the Pistol in March 2019 due to extensive prior litigation concerning similar drop-fire incidents.

127.    Plaintiff justifiably relied on the false information and this information was the proximate and sole cause of Plaintiff's injuries.

128.    The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their negligently supplying false information.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## **Count Ten (In the Alternative Under Florida Law)**

### **Negligence**

129.     Plaintiff incorporates by reference paragraphs 1 through 65 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

130.     Negligence is the failure to use reasonable care, which is the care that a reasonably careful seller, importer, distributor, or supplier would use under like circumstances.

131.     Negligence is doing something that a reasonably careful seller, importer, distributor, or supplier would not do under like circumstances or failing to do something that a reasonably careful seller, importer, distributor, or supplier would do under like circumstances.

132.     Taurus Defendants failed to use that reasonable care that a reasonably careful seller, importer, distributor, or supplier would have used under like circumstances.

133.     Defendants negligently breached their duties of care to Plaintiff in one or more of the following ways:

a.  failing to use and apply good, safe, usual, prevailing, and reasonable principles and standards in importing, testing, inspecting, marketing, and distributing Plaintiff's Pistol;

b.  failing to take adequate corrective action or preventive action;

c.  failing to maintain proper records and data of incidents, complaints, malfunctions, inspections, and testing;

d.   failing to create and provide clear operational and safety instructions, manuals, warnings, and literature;

e.  failing to warn Plaintiff and the public of the Safety Defect;

f.  failing to warn Plaintiff and the public that these Defendants did not inspect or test the pistols before the pistols were distributed;

g.  failing to warn of all the above; and

h.  other acts of negligence to be determined through discovery.

134.     Taurus Defendants' conduct as described in this Complaint is something that a reasonably careful seller, importer, distributor, or supplier would not have done under like circumstances or Taurus Defendants failed to do what a reasonably careful seller, importer, distributor, or supplier would do under like circumstances.

135.     Taurus Defendants' negligence was the proximate and sole cause of Plaintiff's injuries.

136.     The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their negligence.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Eleven (In the Alternative Under Florida Law)

### Breach of Express Warranty

137.     Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 136 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

138.     A product is defective if it does not conform to representations of fact made by Defendants, orally or in writing, in connection with the transaction on which Plaintiff relied in the use of the product.

139.     Taurus Defendants made specific representations of fact in writing in their Instruction Manual and "Limited Warranty," -- written documents which are provided with the pistols and/or which are also published on the USA public website of Taurus Manufacturing. Each of the representations of fact is a separate and independent express warranty made to Plaintiff.

140.    The representations of fact made to Plaintiff and set forth in  the Taurus Manual, include the following: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and [t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;"  (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards." Moreover, the representations of fact made to Plaintiff in the "Limited Warranty," were that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

141.    The Taurus Defendants breached these express warranties by not providing a product which conformed to these representations of fact.

142.    As a direct and proximate cause of Defendants' breach of express warranties, Plaintiff was severely injured.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Twelve (In the Alternative Under Florida Law)

## Breach of Implied Warranty of Merchantability

143.    Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 142 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

144.    A product is defective if it is not reasonably fit for either the uses intended or the uses reasonably foreseeable by Defendants.

145.    Plaintiff's Pistol was not reasonably fit for either the uses intended or the uses reasonably foreseeable by Taurus Defendants due to the Safety Defect.

146.    The Taurus Defendants were on notice of the breach of implied warranties at the time Plaintiff's Pistol was imported, distributed, and sold by Taurus Defendants.  The Taurus Defendants knew, or should have known about the Safety Defect at the time Plaintiff's Pistol was imported, distributed, and sold by Taurus Defendants.

147.    As a result of the Taurus Defendants breach of implied warranties of merchantability, Plaintiff was severely injured.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

### Count Thirteen (In the Alternative Under Florida Law)

### Breach of Implied Warranty of Fitness for Particular Purpose

148.    Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 147 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

149.    A product is defective if it is not reasonably fit for the specific purpose for which Defendants knowingly sold the product and for which, in reliance on the judgment of Defendants, the purchaser bought the product.

150.    Plaintiff's Pistol is defective and was not reasonably fit for the specific purpose for which Taurus Defendants knowingly sold the Pistol and for which, in reliance on the judgment of Taurus Defendants, Plaintiff bought, owned and used the Pistol.

151.    As a result of the Taurus Defendants breach of implied warranties of fitness for a particular purpose, Plaintiff was severely injured.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

**Count Fourteen (In the Alternative Under Florida Law)**

**Strict Liability – Manufacturing Defect**

152.    Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 151 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

153.    Any distributor, importer, or seller in the chain of distribution is liable for injury caused by a defective product.  The Taurus Defendants were a distributor, importer, and sellers in the chain of distribution of Plaintiff's Pistol and are liable for the injuries caused to Plaintiff by the defective Pistol.

154.    A product is defective because of a manufacturing defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

155.    A product is unreasonably dangerous because of a manufacturing defect if it is different from its intended design and fails to perform as safely as the intended design would have performed.

156.    A product is defective if unreasonably dangerous even if Defendants has exercised all possible care in the preparation and sale of the product.

157.    Plaintiff's Pistol is defective because of the manufacturing defect (i.e. the Drop-Fire Defect) as it was different from its intended design and failed to perform as safely as the intended design would have performed. Plaintiff's was expected to and did reach Plaintiff without substantial change affecting that condition.

158.    The manufacturing defect (i.e. Drop-fire Defect) was the proximate and sole cause of Plaintiff's injuries.

159.    The Taurus Defendants are strictly liable for all injuries, damages, and losses that resulted from the manufacturing defect of Plaintiff's Pistol.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Fifteen (In the Alternative Under Florida Law)

### Strict Liability – Design Defect

160.    Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 159 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

161.    Any distributor, importer, or seller in the chain of distribution is liable for injury caused by a defective product.  The Taurus Defendants were a distributor, importer, and sellers in the chain of distribution of Plaintiff's Pistol and are liable for the injuries caused to Plaintiff by the defective Pistol.

162.    A product is defective because of a design defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

163.    A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the defendants, or alternatively, the risk of danger in the design outweighs the benefits.

164.    A product is defective if unreasonably dangerous even if Defendants has exercised all possible care in the preparation and sale of the product.

165.    Plaintiff's Pistol is defective because of the design defect (i.e. the Drop-Fire Defect) and was in in a condition unreasonably dangerous to Plaintiff and the Pistol was expected to and did reach Plaintiff without substantial change affecting that condition.

166.    The design defect (i.e. Drop-fire Defect) was the proximate and sole cause of Plaintiff's injuries.

167.    The Taurus Defendants are strictly liable for all injuries, damages, and losses that resulted from the design defect of Plaintiff's Pistol.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Sixteen (In the Alternative Under Florida Law)

## Strict Liability Failure to Warn

168.    Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 167 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

169.    A product is defective when the foreseeable risks of harm from the product could have been reduced or avoided by providing reasonable instructions or warnings, and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

170.    A product is defective if unreasonably dangerous even if Defendants have exercised all possible care in the preparation and sale of the product

171.    The foreseeable risks of harm from a drop-fire could have been reduced or avoided if Taurus Defendants had provided reasonable instructions or warnings, and the Taurus Defendant's failure to provide these instructions or warnings render Plaintiff's Pistol defective.

172.    The failure to warn was the proximate and sole cause of Plaintiff's injuries.

173.    The Taurus Defendants are strictly liable for all injuries, damages, and losses that resulted from their failure to warn Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Seventeen (In the Alternative Under Florida Law)

### Negligence – Failure to use Reasonable Care

174.    Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 173 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

175.    Negligence is the failure to use reasonable care, which is the care that a reasonably careful seller, importer, distributor, or supplier would use under like circumstances.

176.    Negligence is doing something that a reasonably careful seller, importer, distributor, or supplier would not do under like circumstances or failing to do something that a reasonably careful seller, importer, distributor, or supplier would do under like circumstances.

177.    If a product fails under circumstances precluding any other reasonable inference other than a defect in the product, a plaintiff is not required to pinpoint any specific defect in the product.

178.    A product is defective if unreasonably dangerous even if Defendants have exercised all possible care in the preparation and sale of the product.

179.    Taurus Defendants failed to use that reasonable care that a reasonably careful seller, importer, distributor, or supplier would have used under like circumstances.

180.    Taurus Defendants' conduct as described in this Complaint is something that a reasonably careful seller, importer, distributor, or supplier would not have done under like circumstances or Taurus Defendants failed to do what a reasonably careful seller, importer, distributor, or supplier would do under like circumstances.

181.    Taurus Defendants' negligence was the proximate and sole cause of Plaintiff's injuries.

182.    The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their negligence.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## Count Eighteen (In the Alternative Under Florida Law)

### Negligent Failure to Warn

183.    Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 182 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

184.     Negligence is the failure to use reasonable care, which is the care that a reasonably careful seller, importer, distributor, or supplier would use under like circumstances.

185.     Reasonable care on the part of Defendants requires that Defendants give appropriate warnings about risks of the product which Defendants knew or should have known are involved in the reasonably foreseeable use of the product.

186.     Taurus Defendants failed to use that reasonable care that a reasonably careful seller, importer, distributor, or supplier would have used under like circumstances.

187.     Taurus Defendants did not give appropriate warnings about risks of the Pistol which they knew or should have known were involved in Plaintiff's reasonably foreseeable use of his Pistol.

188.     Taurus Defendants' negligent failure to warn was the proximate and sole cause of Plaintiff's injuries.

189.     The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their negligent failure to warn Plaintiff about the Safety Defect.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

### Count Nineteen (In the Alternative Under Florida Law)

### Intentional Misrepresentation

190.     Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 190 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

191.     Taurus Defendants intentionally made false statements concerning a material fact, they knew the statements were false when they were made or made the statements knowing they

did not know whether they were true or false, and they intended that another would rely on the false statements.

192.    The false statements included the following: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and [t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;"  (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."   Moreover, the representations of fact made to Plaintiff in the "Limited Warranty," were that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

193.    These false statements were a material fact of such importance that Plaintiff would have acted or used his Pistol, but for the false statements. Plaintiff relied on these false statements and the statements were the proximate cause of his injuries.  Plaintiff did not know the statements were false and the falsity of the statements was not obvious to him.

194.    Taurus Defendants' intentional misrepresentation was the proximate and sole cause of Plaintiff's injuries.

195.    The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their intentional misrepresentations.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

### Count Twenty (In the Alternative Under Florida Law)

### Negligent Misrepresentation

196.     Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 195 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

197.     Taurus Defendants made statements concerning a material fact that they believed to be true but which were in fact false and they were negligent in make the statements because they should have known the statements were false and in making the statement they intended or expected that another would rely on the statements.

198.     The false statements included the following: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped" and [t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;"  (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."  Moreover, the representations of fact made to Plaintiff in the "Limited Warranty," were that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

199.    Plaintiff justifiably relied on the false statements and these statements and the statements were the proximate cause of his injuries.

200.    Taurus Defendants' negligent misrepresentation was the proximate and sole cause of Plaintiff's injuries.

201.    The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their negligent misrepresentations.

202.    WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

<u>**Count Twenty-one (In the Alternative Under Florida Law)**</u>

<u>**False Information Negligently Supplied for the Guidance of Others**</u>

203.    Plaintiff incorporates by reference paragraphs 1 through 65, 129 through 202 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

204.    Taurus Defendants (a) supplied false information to Plaintiff in the course of Defendants' business or in a transaction in which Defendants had an economic interest; (b) they were negligent in obtaining or communicating the false information; (c) the Plaintiff was a person for whose benefit and guidance Defendants intended to supply the false information for use by Plaintiff in the handling and operation of his Pistol; and (d) Defendants intended the false information to influence Plaintiff in his transaction or course of his conduct.

205.    The following false information was supplied to Plaintiff: (a) that "[y]our firearm comes equipped with an effective, well designed safety device;" (b) the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (c) that the Trigger Safety "device is designed to preclude the backward movement of the trigger bar so as to prevent an

accidental discharge in case the firearm is dropped" and [t]he system is disengaged when the trigger is pulled to the rear;" (d) the Firing Pin Block is "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position;" (e) the Firing Pin Block "is designed to preclude an accidental discharge should the firearm be dropped;"  (g) "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards." Moreover, the representations of fact made to Plaintiff in the "Limited Warranty," were that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship."

206.    Plaintiff justifiably relied on the false information and this information was the proximate and sole cause of Plaintiff's injuries.

207.    The Taurus Defendants are liable for all injuries, damages, and losses that resulted from their negligently supplying false information.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted, this 15th day of June, 2022.

/s/ David L. Selby, II
David L. Selby, II (*Pro Hac Vice*)
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
Telephone:    (205) 988-9253
Facsimile:    (205) 733-4896
Email:        dselby@baileyglasser.com

Matthew G. Garmon (*Pro Hac Vice*)
M. Todd Wheeles (*Pro Hac Vice*)
MORRIS HAYNES
3500 Colonnade Parkway, Suite 100
Birmingham, AL 35243
Telephone:   (205) 324-4008
Facsimile:   (205) 324-0803
Email:   mgarmon@mhhlaw.net
   twheeles@mhhlaw.net

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2022, the foregoing was filed with the Clerk of Court by using the CM/ECF system which will send a true and correct copy to all parties of record.

*/s/ David L. Selby, II*
David L. Selby, II