UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID PALM,

        Plaintiff,

v.

TAURUS INTERNATIONAL
MANUFACTURING, INC. and TAURUS
HOLDINGS, INC.,

        Defendants.

CAUSE NO. 3:22-CV-337 DRL-MGG

OPINION AND ORDER

A Taurus pistol discharged into David Palm's hand when he dropped it on the floor. He sues Taurus International Manufacturing, Inc. and Taurus Holdings, Inc. (together Taurus) for various product liability and contract claims under Indiana law and alternatively Florida law. Taurus asks the court to dismiss the case.[1] The court grants the motion in part.

BACKGROUND

These facts emerge from the well-pleaded factual allegations in the amended complaint because the defendants filed their motion under Federal Rule of Civil Procedure 12(b)(6). The court must accept these allegations as true for purposes of deciding the motion today.

David Palm, who lives in Indiana, owns a Taurus pistol. A separate company, not named as a defendant here, designed and manufactured the pistol in Brazil. As alleged, Taurus imported, manufactured, tested, inspected, marketed, sold, and distributed Taurus pistols. Mr. Palm says Taurus put his pistol into the "stream of commerce" from its Florida headquarters after failing to test and inspect the pistol properly.

---

[1] Taurus labels the motion to dismiss as "partial" and often asks for a partial dismissal, but then also asks for the entire amended complaint to be dismissed.

Before Mr. Palm purchased the pistol, Taurus made several representations about the pistol's safety. He does not say when, in what context, or to whom these statements were made. He says Taurus knew about a "drop-fire defect" and a "safety defect" when the pistol was imported, marketed, distributed, and sold. He points to the firearm's user manual: "This device is designed to preclude the backward movement of the trigger bar so as to prevent an accidental discharge in case the firearm is dropped." The manual also said that the "firing pin block, which is designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position. This device is designed to preclude an accidental discharge should the firearm be dropped." Mr. Palm alleges that Taurus has known about the drop-fire defect since 2007 based on several prior lawsuits.

Mr. Palm purchased the pistol "in or around March 2019," though where he purchased the pistol remains unknown. Based on the serial number, the pistol was likely manufactured in 2009. On April 13, 2019, Mr. Palm tried to place the pistol on a shelf after cleaning it at his home in Indiana. Despite the manual safety lever being in the "on" or "safe" position, the pistol unintentionally discharged when it fell and struck the hard floor in his living room. A bullet passed through Mr. Palm's left hand. He lost much of his hand's use. Mr. Palm still needs surgery and physical therapy to regain its full use, but he says he lacks health insurance.

Mr. Palm filed a state court complaint in Florida on September 1, 2021. Taurus removed the case on September 30, 2021. On April 28, 2022, the Florida district court transferred the case here. On June 15, 2022, Mr. Palm filed an amended complaint. He alleges manufacturing, design, and warning defects under the Indiana Products Liability Act (IPLA) (counts 1-3); claims for express warranty, implied warranty of merchantability, implied warranty of fitness for a particular purpose, intentional misrepresentation, negligent misrepresentation, and false information negligently supplied for the guidance of others under Indiana law (counts 4-9); and, in the alternative under Florida law, mirror claims to these and negligence (counts 10-21). The motion to dismiss is ripe for ruling.

STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

DISCUSSION

A. *Under Florida's Choice-of-Law Rules, Indiana Law Applies.*

Taurus argues that the Florida claims (counts 10-21) should be dismissed because Indiana law applies. Florida's choice-of-law rules demand that Indiana law applies because Indiana is the place of injury, and Florida does not have a more significant relationship to the lawsuit than Indiana. The only connection to Florida is that the pistol was imported to and placed into commerce in Florida. Furthermore, no policy supports the application of Florida law because the defendants are no longer incorporated in Florida. Florida has little interest in the compensation of an Indiana resident.

Mr. Palm argues that there is a sufficient connection to Florida. He highlights that Taurus learned about the drop-fire defect while operating in Florida; it decided to continue representing the firearm as safe there; it decided to ignore the risks there; and Florida has an interest in punishing those

who operate in such a way. Ultimately, Mr. Palm asks the court to push the choice-of-law analysis to a later date to allow more factual development.

A district court hearing state law claims transferred from a federal court with proper venue applies the choice-of-law rules of the state where the suit originated. *Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021). No one argues that the Florida district court lacked proper venue; it only ruled that Indiana was the more convenient forum under 28 U.S.C. § 1404(a), not that Florida was improper venue. The court thus applies Florida's choice-of-law rules. *See id.*; *see also Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("A change of venue under [28 U.S.C. § 1404(a)] generally should be, with respect to state law, but a change of courtrooms.").

Florida uses the "most significant relationship test" from the Restatement (Second) of Conflict of Laws §§ 145-46 (1971). *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980). The "local law of the state where the injury occurred determines the rights and liabilities of the parties" in a "personal injury" action unless "some other state has a more significant relationship . . . to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 146. "Courts consider four types of contacts to determine which state has the most significant relationship to the matter: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Melton v. Century Arms, Inc.*, 243 F. Supp.3d 1290, 1299 (S.D. Fla. 2017). "A court should evaluate these contacts according to their relative importance with respect to the particular issue." *Id.* (quotation marks and citation omitted).

These factors compel the use of Indiana law today. The injury occurred in Indiana. "The state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law." *Bishop*, 389 So.2d at 1001. Indeed, the place of injury is the

4

"decisive consideration" "absent special circumstances." *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp.2d 1198, 1220 (S.D. Fla. 2008) (citing *Bishop*, 389 So. 2d at 1001).

Florida doesn't have a more significant relationship to this case than Indiana. The injury occurred in Indiana. Mr. Palm resides in Indiana. The site to be inspected and the medical care to be evaluated as damages necessarily occurred in Indiana. Mr. Palm has not disclosed where he purchased the pistol, but the policies that underpin product liability (strict liability and even negligence) operate to establish liability on the distributor or seller who places a defective product into the stream of commerce, and the reality is that this stream brought the firearm into the hands of Mr. Palm in Indiana.

Mr. Palm focuses on Taurus' alleged misconduct in Florida. Florida has an interest in punishing wrongdoers in its state, but that doesn't tip the scales in Florida's favor today. "Florida . . . possesses no interest in compensating domiciliaries of other jurisdictions more richly than they would receive in their own courts." *Cortez v. Am. Airlines, Inc.*, 177 F.3d 1272, 1301 (11th Cir. 1999); *see also Ryder Truck Rental, Inc. v. Rosenberger*, 699 So. 2d 713, 716 (Fla. Dist. Ct. App. 1997) ("Florida has an interest in protecting its citizens and visitors from persons who put dangerous instrumentalities in another's hands, [but] we are not here dealing with Florida plaintiffs, either residents or visitors.").

More to that point, Mr. Palm alleges that Taurus conducted business in Florida at the time the firearm was sold, but not today. Taurus now originates in Georgia—its state of incorporation and base of operations—where it moved in 2019.[2] Its penultimate parent, as alleged in the complaint, designed and manufactured the firearm in Brazil. The corrective measure of product liability thus would motivate manufacturing, warning, or design changes elsewhere than Florida.

Certain decisions underscore this conclusion to apply Indiana law. In *Peoples Bank & Tr. Co. v. Piper Aircraft Corp.*, 598 F. Supp. 377, 379, 382 (S.D. Fla. 1984), for instance, the court used Florida's

---

[2] The court may take judicial notice of matters of public record in deciding a Rule 12(b)(6) motion, including the certificates of conversion filed by both Taurus entities in Florida and Georgia effective December 31, 2019. *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

5

choice-of-law rules to apply Ohio law though the defendant manufactured parts in Florida for a plane that later crashed in Ohio. In *Steele v. S. Truck Body Corp.*, 397 So. 2d 1209, 1210-11 (Fla. Dist. Ct. App. 1981), a Florida court applied the law of the place of injury (West Virginia), reasoning that "[t]he only significant relationship this case has with Florida is that [the defendant] is a Florida corporation with its principal place of business in Tampa, and its van was allegedly negligently and defectively designed, manufactured, and sold into the stream of national commerce in Florida." As here, when "[t]he only relationship Florida has to the litigation is that the conduct of [the defendants] which allegedly caused [the injury] occurred in Florida," the Restatement "makes it clear that [the law of the place of injury] is to be applied in such a situation." *Id.* at 1211.

There are fewer connections to Florida here than these other cases. Mr. Palm has presented no other policy interest or contact that would give Florida a more significant relationship to this case. Indiana law thus applies. Mr. Palm has not articulated what fact or facts would need to be discovered that would alter this analysis or give any cause to delay ruling. This choice of law bears on whether his claims are plausible under Rule 12(b)(6). *See, e.g., Accident Fund Ins. Co. of Am. v. Custom Mech. Constr., Inc.*, 2018 U.S. Dist. LEXIS 6530, 7 (S.D. Ind. Jan. 16, 2018). Accordingly, the court dismisses the Florida claims (counts 10-21) from the amended complaint.

    B.   *The Indiana Product Liability Act (IPLA) Subsumes and Merges All Claims into One Claim.*

The defendants ask the court to dismiss all counts under Indiana law, save the three variants under the IPLA. They argue that the three warranty claims, two misrepresentation claims, and the false information claims are subsumed by the IPLA. Mr. Palm concedes that his misrepresentation and false information claims are subsumed by the IPLA, so the court dismisses these claims (counts 7-9). The court concludes that the warranty claims as pleaded are subsumed by the IPLA too.

The IPLA governs all tort claims brought by a consumer against a manufacturer or seller for physical harm caused by its product—regardless of legal theory. Ind. Code § 34-20-1-1; *see Kennedy v.*

6

*Guess, Inc.*, 806 N.E.2d 776, 779-80 (Ind. 2004); *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1007-08 (7th Cir. 2020). A company who places "into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer . . . is subject to liability for physical harm caused by that product." Ind. Code § 34-20-2-1. The IPLA recognizes three theories of liability. "A product may be defective under the IPLA if it is defectively designed, if it has a manufacturing flaw, or if it lacks adequate warnings about dangers associated with its use." *Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019); *accord Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 956 (Ind. 2018).

The IPLA also subsumes warranty claims in certain circumstances. *See, e.g., Borkenstein v. Am. Med. Sys.*, 2020 U.S. Dist. LEXIS 11420, 9-10 (N.D. Ind. Jan. 21, 2020); *Piltch v. Ford Motor Co.*, 11 F. Supp.3d 884, 888 n.3 (N.D. Ind. 2014). Tort law and contract law otherwise remain separate, *see, e.g., Hitachi Constr. Mach. Co. v. Amax Coal Co.*, 737 N.E.2d 460, 465 (Ind. Ct. App. 2000) (quoting *B & B Paint Corp. v. Shrock Mfg., Inc.*, 568 N.E.2d 1017, 1020 (Ind. Ct. App. 1991)), particularly as the IPLA in tort governs claims that a defective product caused personal injury or damage to other property, but contract law (UCC) governs damage to the product or pure economic losses from its failure to perform as warranted, *see Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005); *see also Fleetwood Enters. v. Progressive Northern Ins. Co.*, 749 N.E.2d 492, 495 (Ind. 2001) ("plaintiff may readily pursue both a contract claim for damage to a product itself and a tort claim for personal injury or damage to other property under the [IPLA]").

Taurus argues that the warranty claims (counts 4-6) should be subsumed by the IPLA. The company says Mr. Palm alleges a personal injury from the product's use, not pure economic harm. Mr. Palm argues that the presence of a personal injury does not foreclose recovery under a contract theory. *See Bayer Corp. v. Leach*, 153 N.E.3d 1168, 1190 (Ind. Ct. App. 2020) ("IPLA did not vitiate the provisions of the UCC" and a "litigant [can] proceed on both tort-based and contract-based theories" (citations and quotations omitted)). He notes that the IPLA and the UCC offer two distinct avenues

7

for recovery. He argues that he has pleaded two categories of damages—personal injury to his hand and the economic loss of a pistol that fell short of its warranted expectations.

In truth, his amended complaint does no such thing. Each warranty claim alleges only Mr. Palm's personal injury and injury originating from a product defect. For the express and implied warranty counts, Mr. Palm alleges that as a direct and proximate cause of Taurus' breaches, "Plaintiff was severely injured" from a "defective" product. *See Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 976 (Ind. 2002) ("legislature intended that the [IPLA] govern all product liability actions"). Mr. Palm never alleges in these counts a pure economic loss compensable under the UCC. In addition, he seeks punitive damages in each of these counts, thereby indicating that they are tort-based, not UCC-based. *See Don Webster Co. v. Ind. W. Express, Inc.*, 186 F. Supp.2d 958, 962 (S.D. Ind. 2002). His general allusion to unspecified "economic damages" in his response neither proves consistent with the amended complaint nor preserves the point. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). As pleaded, these claims (counts 4-6) are subsumed by the IPLA. *See Piltch*, 11 F. Supp.3d at 888 n.3.

That leaves for discussion only the counts (counts 1-3) for the three variants of a product liability claim. There is but one claim under the IPLA, with these three theories to pursue. The better practice is to merge these theories into one claim. *See Montgomery v. Ethicon, Inc.*, 2021 U.S. Dist. LEXIS 201124, 6-8 (N.D. Ind. Oct. 19, 2021); *Cavender v. Medtronic*, 2017 U.S. Dist. LEXIS 57376, 14 (N.D. Ind. Apr. 14, 2017). Recognizing that three types of defects might be pursued, and acknowledging that strict liability principles apply only to the manufacturing defect theory whereas negligence principles apply to the warning and design theories by statute, *see* Ind. Code § 34-20-2-2; *Montgomery*, 2021 U.S. Dist. LEXIS 201124 at 5-6, no matter the theory the IPLA requires a user or consumer to establish that the product was in a "defective condition unreasonably dangerous" to him, Ind. Code § 34-20-2-1. Duplicative counts thus serve little purpose. The court grants the motion to dismiss, except as to the single merged claim under the IPLA based on the three theories of product defect.

    C. *The Amended Complaint May Proceed Against Taurus Holdings Without Piercing the Corporate Veil.*

    Taurus argues that Mr. Palm improperly lumps the two Taurus companies together without any specific allegations as to each. Taurus assumes that Mr. Palm must be trying to pierce the corporate veil because only that doctrine would permit Taurus Holdings to be held liable. Taurus thus asks the court to dismiss all claims against Taurus Holdings because Mr. Palm has not alleged facts supporting the piercing of the corporate veil. Mr. Palm stokes the flames of this position in briefing by asking the court to allow discovery before determining whether veil piercing is warranted.

    The court need not decide veil piercing today—or perhaps at all—because that seems not to be the nature of Mr. Palm's allegations against Taurus Holdings. Mr. Palm alleges throughout the amended complaint that both Taurus entities participated in the alleged misconduct. He says they were both "in the business of [and] . . . responsible for importing, testing, inspecting, marketing, selling, and distributing [the] Taurus Pistol" [ECF 47 ¶ 10]. He claims the Taurus pistol was distributed "via Defendants Taurus Manufacturing and Taurus Holdings" [*id.* ¶ 11]. He says they made a "collective decision not to disclose, but rather to misrepresent, the known Safety Defect" [*id.* ¶ 18], and that their conduct "combined and concurred to cause [his] injuries" [*id.* ¶ 24].

    These allegations, taken as true, would hold Taurus Holdings directly liable for product liability, not as an owner or alter ego of Taurus International. The court declines to dismiss Taurus Holdings from the amended complaint accordingly.

## CONCLUSION

    The court GRANTS IN PART the motion to dismiss [ECF 52] and DISMISSES counts 4-21 of the amended complaint. The amended complaint may proceed against both defendants in a single cause of action under the IPLA through the design defect, manufacturing defect, and failure to warn theories stated in counts 1-3 and hereafter merged as one count.

SO ORDERED.

December 15, 2022
*s/ Damon R. Leichty*
Judge, United States District Court